
**UNITED STATES of America**

v.

**Marianne Denise CONWAY, M.D.**

**Civ. A. No. 87–1181.**

United States District Court,
E.D. Louisiana.

May 27, 1988.

■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■
■■■■■■■■■■■■■■■■■■

John Volz, U.S. Atty., Mark Galling-house, Asst. U.S. Atty., New Orleans, La., for U.S.

Sessions, Fishman, Rosenson, Boisfon-taine, Nathan & Winn, Alan D. Ezkovich, T.A., New Orleans, La., for Marianne Den-ise Conway, M.D.

## REASONS FOR JUDGMENT

PATRICK E. CARR, District Judge.

The parties' cross motions for summary judgment came on for hearing before this Court on March 23, 1988. After consideration of the oral arguments, the stipulated facts, the record, and the applicable law, the Court renders its reasons for judgment:

On June 7, 1979, the defendant, Dr. Marianne Denise Conway, who had already been accepted as a medical student applicant at the University of Health Services Chicago Medical College, applied for a scholarship award through the National Health Service Corps (NHSC) Scholarship Program. The Scholarship Program was established by Section 751 *et seq.* of the Public Service Health Act, currently codified at 42 U.S.C. § 254*l et seq.*

Also, on June 7, 1979, Dr. Conway executed a NHSC Scholarship Program contract in which she agreed, *inter alia*, to serve one year of obligated service for each year the scholarship award was provided, with a minimum obligation of two years. Prior to applying for this scholarship, the defendant received an Applicant Information Bulletin dated December, 1978 which contained information concerning the consequences of breach of the obligation to serve.

Dr. Conway subsequently applied for and received a continuation of the NHSC scholarship for the academic years of July 1, 1980 through June 30, 1981, July 1, 1981 through June 30, 1982, and July 1, 1982 through June 30, 1983. In accordance with the scholarship contract and the extension and amendment contracts, scholarship awards were made by the NHSC Scholarship Program totalling $79,567.09. Under the terms of the scholarship contract, Dr. Conway was obligated to serve four (4)

years either in the National Health Service Corps or through other enumerated methods following completion of her academic training. However, Dr. Conway could request a deferment of her service obligation in order to pursue advanced clinical training. In accordance with the applicable statutes and regulations, the NHSC Scholarship Program was required to approve all requests from physician scholars for a deferment of up to three years in order to complete advanced clinical training. Deferment requests of greater than three years may be approved by the NHSC Scholarship Program if the request is consistent with the needs of the NHSC, in accordance with the applicable law.

On October 15, 1982, Dr. Conway contacted the NHSC Scholarship Program about a four year deferment of her service obligation to NHSC in order to pursue a a residency program in ophthalmology. She was orally advised that the NHSC Scholarship Program would not defer service obligations for physicians seeking residencies in ophthalmology. On April 12, 1982, the NHSC Scholarship Program had sent Dr. Conway written notification of the training programs for which deferments would be granted.

Dr. Conway graduated from medical school in June, 1983. On May 17, 1873, prior to her graduation, Dr. Conway requested a deferment to complete a one year flexible internship. The NHSC approved her request and the commencement of Dr. Conway's service obligation was deferred until July 1, 1984. On June 20, 1983, the NHSC sent Dr. Conway a packet of information outlining the policies and procedures applicable to the placement of scholarship recipients scheduled to begin service in July, 1984. This placement package included a Site Selection Questionaire (SSQ) to be completed and returned to the NHSC by July 15, 1983. Dr. Conway elected not to submit a completed SSQ and consequently the NHSC notified her on November 1, 1983 that upon completion of her one year internship she would be assigned to the Indian Health Service (IHS) for fulfillment of her NHSC obligation commencing in July, 1984. The deadline for confirming was April 15, 1984.

On December 9, 1983, Dr. Conway contacted the Scholarship Program personnel about extending her deferment. The NHSC Scholarship Program verbally advised the defendant that the deadline for requesting a deferment had passed and that she would have to send in a written request. On February 28, 1984, Dr. Conway was notified by letter that her continued deferment would be considered if she informed the NHSC of the type of training which she wished to pursue and the letter re-confirmed that deferment for ophthalmological training would not be approved.

On March 27, 1984, Dr. Conway was contacted again by the IHS about finalizing a placement with the IHS and was reminded of the April 15, 1984 deadline for doing so. Dr. Conway failed to confirm placement with the IHS or obtain an approved deferment resulting in notice to the defendant on May 18, 1984 of the IHS's intent to recommend that Dr. Conway be placed in default of her scholarship awards. Dr. Conway did not correspond with the NHSC or reply to notices or demands by them after the December 11, 1983 correspondence.

On July 3, 1984, Dr. Conway was declared to be in breach of her NHSC Scholarship contract as a result of her failure to begin her service obligation on July 1, 1984. She was advised that due to her default, she would be required to pay three times the amount of all NHSC scholarship funds paid to her for her medical education plus interest. By letter dated June 7, 1985, Dr. Conway was informed by the NHSC that she owed $400,408.39 consisting of principal in the amount of $238,701.27 and interest in the amount of $161,707.12, with interest accruing thereafter at the rate of 17.395 percent per annum. Dr. Conway was requested to pay this amount by June 30, 1985.

By letter of May 6, 1987, Dr. Conway offered to perform ophthalmologic health care services in a designated Health Manpower Shortage area (HMSA) to be agreed upon between the NHSC and Dr. Conway,

conditioned upon her being allowed to complete her residency in ophthalmology. Dr. Conway's request to fulfill her service obligations by working at Charity Hospital, in New Orleans, Louisiana was denied on November 3, 1987 due to the fact that by NHSC criteria New Orleans is not a "need" area for ophthalmology. Counsel for plaintiff, the United States of America, at that time also advised counsel for Dr. Conway that as of July, 1988, that there was a vacancy in ophthalmology with the Indian Health Service (IHS) in Gallup, New Mexico. Dr. Conway was given until November 30, 1987 to make a decision regarding whether she wished to arrange a site visit and accept that position. By agreement of counsel, the position was held open through February 15, 1988. Some two and a half months later, the defendant finally inquired about the position at Gallup, New Mexico, but the IHS had hired someone else to fill the position due to the defendant's tardiness in making the necessary arrangements for a site visit.

As of today's date, Dr. Conway has failed to accept any assignment for completion of her service obligation in lieu of repayment and has made no payment towards the debt.

She has repeatedly failed to serve out her obligatory service as requested by the Secretary through the NHSC. Dr. Conway has agreed to serve out her four year commitment only at Charity Hospital and requests that it be deemed a health manpower shortage area.

This Court finds that to permit a recipient of scholarship funds to make an agreement with NHSC for such funds and then to permit the recipient to decide what service will be rendered and where it would be rendered would result in absolute chaos in any such program. Such actions would be intolerable and would most certainly destroy any such program.

Furthermore, the circumstances under which waivers and suspensions of obligations may be granted has been committed to the discretion of the Secretary. The Administrative Procedure Act, 5 U.S.C. § 706 requires the Court to "hold unlawful and set aside agency action, findings and the conclusions found to be (A) arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law ..." 5 U.S.C. § 706(2)(A). This Court finds that the defendant has made no such showing that the Secretary or NHSC acted in any other way than that prescribed by statute.

Due to the default of the NHSC Scholarship contract, Dr. Conway owes to the United States of America the sum of $520,993.86 through May 25, 1988 with interest accruing thereafter at the rate of 17.395 percent per annum or $113.76 per day.

This Court holds that the defendant, Dr. Marianne Denise Conway has breached her contract with the government in failing to perform her period of obligated service and that the government's motion for summary judgment will be granted and the defendant's motion will be denied. Judgment shall be rendered accordingly.